960 So.2d 114 (2007)
Gregory ODEN
v.
James GALES, Jr. and Allstate Insurance Company.
No. 2006 CA 0946.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*115 Cyrus J. Greco, Matthew L. Mullins, Baton Rouge, Counsel for Plaintiff/Appellant Gregory Oden.
Anthony M. Butler, Baton Rouge, Counsel for Defendant/Appellee Allstate Insurance Company.
Before: KUHN, GAIDRY, and WELCH, JJ.
*116 GAIDRY, J.
The plaintiff-appellant, Gregory Oden, appeals a trial court judgment on a jury verdict in this personal injury action. For the following reasons, we affirm the judgment.

FACTS AND PRIOR PROCEEDINGS
This action arises from a motor vehicle accident that occurred on May 28, 2000, in Baton Rouge, Louisiana. The plaintiff, Mr. Oden, was the driver of an automobile which was struck from the rear by a following automobile operated by James Gales, Jr. The collision caused considerable damage to Mr. Oden's automobile, and he was taken by ambulance to the emergency room of Earl K. Long Medical Center.
According to Mr. Oden, the collision caused the right rear of his head to strike his headrest with considerable force, causing a bump or "big knot" and rendering him "dazed." He also experienced the onset of neck pain, which "lasted about a week." Although he did not actually lose consciousness, he testified at trial that "it seemed like [he] was about to." At the hospital emergency room, he was x-rayed, examined, and prescribed pain medication before being discharged with instructions to return for a followup examination regarding his x-ray results. The x-ray films of the skull were normal, while those of the neck revealed only mild degenerative changes of the lower cervical spine. He returned to the emergency room on May 31, 2000, and was prescribed a different medication for pain and advised to return if he experienced any further problems.
Mr. Oden did not seek further treatment until over a year later, on July 18, 2001, when he consulted John M. Boutte, Ph.D., a clinical psychologist in Slidell. At trial, Mr. Oden explained that his occupation was that of a union boilermaker, and that because of lack of available work, he was not employed at the time of the accident, had not accumulated enough work hours to maintain his health insurance through his union, and could not afford to seek further treatment after the emergency room visits. He testified that he eventually decided to consult Dr. Boutte because of memory problems and unusual physical sensations he was experiencing, as well as his concern "about starting to develop seizures" from the blow to his head. Dr. Boutte diagnosed a depressive disorder and a possible cognitive disorder, and recommended that Mr. Oden consult a psychologist in the Baton Rouge area, closer to his residence, in order to avoid long drives to Slidell.
Mr. Oden next consulted Cary D. Rostow, Ph.D., a clinical psychologist and neuropsychologist, five months later on December 20, 2001. Dr. Rostow diagnosed an adjustment disorder with mixed anxiety and depression and a pain disorder associated with those psychological factors.
After being examined by another neuropsychologist, John Bolter, Ph.D., at the request of Allstate Insurance Company (Allstate), Mr. Oden was evaluated on two occasions in September 2003 and February 2004 by a neurologist, Gerard Dynes, M.D. An MRI study of the brain and an EEG study conducted in January 2004 were both essentially normal.
Mr. Oden filed suit for damages against Mr. Gales and his liability insurer, Allstate. Mr. Gales died prior to trial, leaving Allstate as the sole defendant. Following a jury trial on June 8 and 9, 2005, at which the issue of Allstate's liability was stipulated, the jury returned a verdict in favor of Mr. Oden, awarding him $1,000.00 in general damages for pain and suffering and $800.00 for medical expenses. The trial court entered its final signed judgment on the jury verdict on February 6, *117 2006.[1] Mr. Oden now appeals.

ASSIGNMENTS OF ERROR
Mr. Oden contends that the judgment incorporating the jury verdict is in error in these respects:
1. The jury abused its discretion in awarding damages below what a reasonable trier of fact would [assess] for the effects of the injuries [sustained] by plaintiff.
2. The jury committed legal error by failing to award Mr. Oden damages for mental anguish and loss of enjoyment of life after finding Mr. Oden was injured and incurred medical expenses.

ANALYSIS
As part of his first assignment of error, Mr. Oden contends that the jury abused its discretion by awarding inadequate general damages for pain and suffering. But he also contends in his second assignment of error that the jury's refusal to make awards for "mental anguish" and "loss of enjoyment of life" amounts to legal error, thus warranting a de novo assessment of all general damages and review of damage awards for injuries comparable to those he claims, citing Hoyt v. State Farm Mut. Auto. Ins. Co., 623 So.2d 651, 660 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La. 1993). We disagree with that characterization of the applicable standard of review, and find Hoyt factually distinguishable.

Standard of Review
The trier of fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1; Cheramie v. Horst, 93-1168, p. 6 (La.App. 1st Cir.5/20/94), 637 So.2d 720, 723. The discretion vested in the trier of fact is great, even "vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74; Youn, 623 So.2d at 1261. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn, 623 So.2d at 1260.
Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. Youn, 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Id. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude *118 that the award is inadequate. Theriot., 625 So.2d at 1340.
If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. Prior awards under similar circumstances serve only as a general guide. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Id.

Pain and Suffering
Under the foregoing standard of review, we must first examine the facts and circumstances relating to Mr. Oden's particular injuries. The primary disputed issues at the trial of this matter were the nature and causation of Mr. Oden's claimed injuries. By their nature, these issues were interrelated. The trial court's finding regarding causation is a factual finding and must be reviewed under the manifest error standard. Robling v. Allstate Ins. Co., 97-0582, p. 4 (La.App. 1st Cir.4/8/98), 711 So.2d 780, 783. In a personal injury suit, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the injury sustained and the accident which caused the injury. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injury was caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759.
The ambulance run report, introduced into evidence, confirmed that Mr. Oden was complaining of posterior head pain and back pain, and that "slight bruising" of the head was noted. The report listed an unknown depression medication under Mr. Oden's "current medications," and also noted a past medical history of "depression." The emergency room record of Earl K. Long Medical Center noted Mr. Oden's complaint of a "knot" on the back of his head, along with a discharge diagnosis which included "contusions." That record also documented a past history of depression and use of antidepressant medication.
Mr. Oden testified at trial that he had previously been treated for depression between 1991 and 1993 at a Baton Rouge mental health clinic and had been prescribed medication for that condition. He claimed, however, that his condition had improved by the time of the accident.
In the interval between the followup hospital visit after the accident and his evaluation by Dr. Boutte, Mr. Oden worked in his occupation in Massachusetts and Rhode Island for approximately a year. He admitted that his complaints after the accident did not cause him to lose any time from work. He testified that by the time he returned to Baton Rouge from his work out of state, he began to notice strange "tingling" or "moving" sensations in his torso and arm, primarily at night, along with feelings of depression. He claimed that he was still experiencing those sensations and memory problems at the time of trial.
Dr. Boutte did not testify at trial, but his report from his clinical interview of Mr. Oden was introduced into evidence. The stated reasons for the consultation were Mr. Oden's "[l]oss of memory, headaches, earache and no motivation," as well as his desire to "find out if [he had] brain damage." Dr. Boutte recorded that Mr. Oden reported a history of the accident, a primary complaint of "memory problems" since that date, and the onset of "sad mood, decreased interest, sleep difficulty, *119 concentration problems, and thoughts of danger" within the month prior to the evaluation. Mr. Oden also advised Dr. Boutte that during the prior year, he had experienced "unemployment, financial stress and threat of job loss." During the interview, Mr. Oden exhibited moderate levels of clinical depression. Significantly, the report did not specifically relate or attribute the diagnoses to the accident. Dr. Boutte saw Mr. Oden on only that one occasion.
Mr. Oden was referred by his attorney for evaluation by Dr. Rostow. He saw Dr. Rostow on only one occasion. Dr. Rostow's general impression was that of an adjustment disorder with mixed anxiety and depression, as well as a pain disorder. He found no objective evidence of memory loss, but concluded that Mr. Oden's subjective complaints in that regard were a "compensatory symptom" that was psychological or emotional in origin. He also believed that Mr. Oden's physical complaints at the time of his evaluation were a "depressive equivalent," a psychological response to his depression.
At the time of his evaluation, Dr. Rostow was under the erroneous impression that Mr. Oden had been under Dr. Boutte's continuing care since the time of the accident. He also incorrectly believed that Mr. Oden had been hospitalized for two to three days after the accident. In addition to those misconceptions, Dr. Rostow admitted under cross-examination that he was unaware of the extent of Mr. Oden's financial difficulty at the time he evaluated him, and that such difficulty is a known stressor or cause of depression. However, Dr. Rostow maintained his opinion that the depression was partly attributable to the accident, which was the "proximal cause" of the development of the symptoms. Finally, Dr. Rostow admitted that his evaluation of Mr. Oden was not for purposes of his undertaking treatment of Mr. Oden, but for diagnostic purposes to facilitate his treatment by others.
John Bolter, Ph.D., a neuropsychologist, evaluated Mr. Oden on behalf of Allstate on January 27, 2003. Mr. Oden's primary complaints at that time were memory loss and strange bodily sensations. In addition to his opinion that Mr. Oden did not sustain any organic brain damage as the result of the accident, he concluded that there was no evidence and "too much doubt" to conclude that Mr. Oden's psychological condition was related to the accident. Under cross-examination, Dr. Bolter did not dispute Dr. Rostow's diagnostic impression, and admitted that it was "very clear" that Mr. Oden had some psychological problems. He also agreed that the odd physical sensations described by Mr. Oden might be a "depressive equivalent." It was Dr. Bolter's impression that Mr. Oden's failure to advise him of any history of past treatment for depression was deliberate rather than a memory lapse, given the contrary history provided to the emergency room physician. He explained that his conclusion that Mr. Oden "lied to [him] about his history" was corroborated by an elevated L-scale on the MMPI-2 psychological test and a followup credibility scale, both of which indicated that Mr. Oden was the type of person who tended not to admit to common human frailties.
Mr. Oden next consulted Gerard Dynes, M.D., a neurologist, on September 3, 2003, on referral from his family physician. Dr. Dynes's testimony was presented by deposition. Dr. Dynes testified that Mr. Oden related the history of the accident and complained of continued, unchanged memory loss and odd sensations such as leg movement and jerking since the accident. His neurological examination was normal, as was a simple mental status and memory examination. Dr. Dynes recommended *120 MRI and EEG studies, which were performed in January 2004 and were essentially normal. Mr. Oden was seen for a followup examination on February 19, 2004, complaining of odd sensations or paresthesias in his stomach and arms. His neurological examination was again normal. Dr. Dynes noted that unchanged memory loss over a period of three years was atypical for a post-concussive syndrome. When asked whether his treatment related to injury from the accident, Dr. Dynes characterized that issue as "a challenge," and stated that he could not be definite on that point. He explained that he only saw Mr. Oden twice and did not have the opportunity to review the neuropsychological reports, which he felt might be helpful. When asked whether the unusual sensations or paresthesias were related to head trauma, Dr. Dynes's response was, "I doubt it."
Because a jury was the trier of fact in this case, we do not have the benefit of articulated findings of fact or reasons for judgment. However, we may deduce the jury's conclusions from the awards rendered in its verdict and from a question it posed to the trial court during its deliberations. See Metrejean v. Prudential Ins. Co., 98-2170, p. 13 (La.App. 1st Cir.11/5/99), 761 So.2d 1, 9; Hoyt, 623 So.2d at 657.
The jury posed a written question relating to the first interrogatory on the verdict form: "Was James Gales' negligence a substantial factor in bringing about Gregory Oden's injuries?" Based upon that interrogatory, the jury asked, "What injuries?" The trial court recalled the jury to the courtroom and explained that although the liability issue was stipulated, the jury was required to determine "what[,] if any[,] injuries were caused by this accident." As the foreman explained to the trial court, the jury was "concerned about the problem about [Mr. Oden's] mental condition as well as his bumps and bruises."
The jury awarded Mr. Oden the sum of $800.00 for "past, present, and future medical expenses." Mr. Oden contends that this award was inadequate, but has not specifically stated the basis of his contention in that regard. We must therefore assume that it relates solely to the jury's failure to award the total amount of medical and psychological expenses documented at trial, or $5,441.75. We note that the jury's award only slightly exceeds the total medical expenses incurred for his ambulance service and hospital evaluation and treatment, $493.75, or perhaps those expenses combined with the bill of Dr. Boutte, $257.00, for a total of $750.75.[2] Given the equivocal testimony of Dr. Dynes as to the relationship of his treatment to the accident, as well as the inconclusive nature of his diagnosis, the jury obviously concluded such treatment was not shown to be related to injury caused by the accident. Likewise, the incomplete history provided to Dr. Rostow and his incorrect assumptions regarding the nature of Mr. Oden's immediate post-accident treatment undoubtedly influenced the jury's refusal to award his evaluation fee of $1,875.00.
The jury's awards are consistent with a finding that Mr. Oden sustained minor to moderate physical injuries of relatively brief duration, and that his later complaints *121 of depression, memory loss, and subjective pain and paresthesias were not attributable to the accident. The record clearly supports the conclusion that there were two permissible views of the evidence relating to the nature and causation of the claimed injuries, and that the jury was ultimately required to base its decision upon Mr. Oden's credibility and the underlying history and findings of the expert witnesses. Such being the case, the jury's implicit finding that Mr. Oden sustained only minor to moderate physical injuries of brief duration and failed to prove the causation of his depression and other claimed injuries cannot be manifestly erroneous. See Stobart v. State ex rel. Dept. of Transp. and Dev., 617 So.2d 880, 883 (La. 1993).
Given the jury's factual findings expressed in its verdict and based upon our thorough review of the record on appeal, we find no abuse of the jury's great discretion in the total award of general damages for pain and suffering. Thus, it is inappropriate and unnecessary for us to undertake a comparison of the award in this case with past awards. See Youn, 623 So.2d at 1260.

"Mental Anguish" and "Loss of Enjoyment of Life"
In the Hoyt case, relied upon by Mr. Oden, the jury awarded the plaintiff's minor son $22,500.00 in general damages, as well as an award for past medical expenses. The minor had been treated for neck, back, and head injuries following a motor vehicle accident. The trial court subsequently granted the plaintiff's motion for judgment notwithstanding the verdict (JNOV) and increased the general damages award to $60,000.00 as to the back and neck injuries only. In doing so, the trial court acknowledged in its reasons that the jury evidently concluded that the plaintiff's son's mental dysfunction was not caused by the accident. While agreeing with the trial court as to the latter finding by the jury, this court nevertheless held that the trial court committed legal error by failing to award general damages for a closed head injury and post-concussion syndrome, as distinguished from the mental dysfunction claim. We based our ruling on the fact that the jury's award of medical expenses clearly included hospital and diagnostic test expenses related to the head injury and post-concussion syndrome. Id. at 660. We thereupon increased the original general damages award by an additional $15,000.00 for the head injury and post-concussion syndrome.
However, since the rendition of Hoyt, the supreme court has held that "the particular facts of each case are ultimately determinative" as to whether awards for different elements of damages in personal injury cases are inconsistent, and that "there is no bright line rule at work" in situations where special damages are awarded but no general damages are awarded. Wainwright, 00-0492 at pp. 8-9, 774 So.2d at 76. Thus, while it is still true that "a jury verdict awarding medical expenses but simultaneously denying damages for pain and suffering will most often be inconsistent in light of the record," it cannot be concluded that such a perceived inconsistency always amounts to legal error. Wainwright, 00-0492 at pp. 6-7, 774 So.2d at 75.
Here, unlike Hoyt, the trial court's judgment did not exclude any award of general damages for a particular injury while at the same time including the award of medical expenses for treatment of that injury. The jury in this case made an award of general damages for the element of "pain and suffering," but obviously concluded that Mr. Oden's claims related to depression, memory loss, and other mental or *122 psychological dysfunction were not caused by the accident.[3]
The same considerations applicable to the award for pain and suffering apply to the jury's failure to award general damages for the elements of "mental anguish" and "loss of enjoyment of life" listed separately on the verdict form. Although both elements, like pain and suffering, are components of general damages, "loss of enjoyment of life" is conceptually different from the element of pain and suffering, while "mental anguish" is not. See McGee v. A C and S, Inc., 05-1036, pp. 5-7 (La.7/10/06), 933 So.2d 770, 775-76. "Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies [sic] an injury." McGee, 05-1036 at p. 5, 933 So.2d at 775. (Emphasis supplied.) Here, the verdict form did not expressly limit the element of pain and suffering to physical sensations, to the exclusion of mental or emotional aspects. To some extent, an undifferentiated award of general damages for "pain and suffering" may be duplicative of an award for "mental anguish" deriving from the same injury. We conclude it is inappropriate to split hairs so finely under these facts, and that the jury's failure to make a separate award for "mental anguish" was neither manifest error nor legal error.
We similarly find no manifest or legal error as to the jury's refusal to award damages for "loss of enjoyment of life." The jury evidently concluded that those injuries proven to have been sustained by Mr. Oden did not cause him a detrimental lifestyle change warranting such an award. See McGee, 05-1036 at p. 5, 933 So.2d at 775. The record provides an evidentiary basis for the jury's decision.
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Gregory Oden.
AFFIRMED.
NOTES
[1] The trial court's original judgment was signed on November 29, 2005. The original judgment was amended on February 6, 2006 to reflect that only the jury verdict, rather than the judgment, was entered on June 9, 2005.
[2] The jury conceivably could have concluded that Mr. Oden was warranted in seeking an evaluation by Dr. Boutte to rule out "brain damage," his expressed concern, and was therefore entitled to recover the cost of that evaluation even if no brain or psychological injury was caused by the accident. See Wainwright, 00-0492 at pp. 10-11, 774 So.2d at 77-8.
[3] Thus, the facts of this case more closely resemble those of Metrejean v. Prudential Ins. Co., 98-2170 (La.App. 1st Cir.11/5/99), 761 So.2d 1, than those of Hoyt. In Metrejean, the plaintiff sustained a head injury which he contended caused his personality to change and resulted in chronic debilitating headaches and post-concussion syndrome. The jury made awards of $1,200.00 for "past and present physical pain and suffering" and $2,000.00 for "past and present mental pain and suffering." We affirmed the jury's verdict, finding the jury's limited awards of medical expenses and lost wages to be consistent with "a mild closed head injury with no long-term complications." Metrejean, 98-2170 at p. 13, 761 So.2d at 9-10.