30 So.3d 782 (2009)
Regina GILLMER, individually, and on Behalf of Morgan Schumacher
v.
PARISH STERLING STUCKEY and Progressive Paloverde Insurance Company.
No. 2009 CA 0901.
Court of Appeal of Louisiana, First Circuit.
December 23, 2009.
*784 Jack W. Riffle, Baton Rouge, Louisiana, for Defendant/Appellant, Allstate Insurance Company.
Matthew W. Pryor, Timothy E. Pujol, Gonzales, Louisiana, for Plaintiff/Appellee, Regina Gillmer, individually, and on behalf of Morgan Schumacher.
Before DOWNING, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
An automobile insurer appeals a judgment against it and in favor of its insured, awarding damages under its underinsured motorists coverage. The insured answers the appeal, seeking an additional award of damages for her minor granddaughter under that coverage. For the following reasons, we affirm the trial court's judgment and deny the answer to the appeal.

FACTUAL AND PROCEDURAL BACKGROUND
On May 5, 2006, at approximately 6:00 p.m., a collision occurred between two motor vehicles at the intersection of the Florida Boulevard service road and Stevendale Avenue in Baton Rouge, Louisiana. The collision involved an automobile owned and operated by the plaintiff, Regina Gillmer, and a pickup truck owned and operated by Parrish S. Stuckey. Plaintiffs minor granddaughter, Morgan Schumacher, was a passenger in plaintiffs automobile. After plaintiff executed a right turn from Florida Boulevard onto Stevendale Avenue, her automobile was struck by Mr. Stuckey's pickup truck, which was travelling on the service road that parallels Florida Boulevard.
On April 30, 2007, plaintiff filed a petition for damages against Mr. Stuckey and his automobile liability insurer, Progressive Paloverde Insurance Company (Progressive), in Livingston Parish, where Mr. Stuckey resided. Plaintiff alleged that the accident at issue was caused by Mr. Stuckey's fault, and that she and Morgan sustained personal injuries as the result of the accident.[1] Progressive answered the petition, generally denying its liability and that of Mr. Stuckey, and also alleged various affirmative defenses. Progressive neither expressly admitted nor denied its issuance of a policy of insurance to Mr. Stuckey, but only alleged that any such policy was the best evidence of its terms and conditions.
On October 1, 2007, plaintiff filed a supplemental and amending petition, adding Allstate Insurance Company (Allstate) as a *785 defendant and asserting a cause of action against it under the underinsured motorists (UIM) coverage of plaintiffs policy of automobile liability insurance.
On October 19, 2007, plaintiff moved to dismiss her claims against Mr. Stuckey and Progressive on the grounds that they had been compromised, but reserved her rights to seek further damages from Allstate. The order dismissing plaintiffs claims against Mr. Stuckey and Progressive was signed on October 24, 2007.
Allstate filed its answer to plaintiffs petition on December 11, 2007, admitting the existence of its policy but denying its liability. It further affirmatively alleged plaintiffs fault in causing the accident at issue and her failure to mitigate her damages. Finally, it asserted its right to a credit for all underlying liability coverage, including that of Progressive, applicable to plaintiff's claims.
A bench trial was conducted on December 16, 2008. Following the conclusion of the presentation of plaintiffs case, Allstate moved for involuntary dismissal of plaintiffs claims, on the grounds that she failed to meet her burden of proof of Mr. Stuckey's underinsured status.[2] The trial court denied the motion. After Allstate rested its case, the trial court took the matter under advisement.
The trial court issued written reasons for judgment on January 22, 2009. In its written reasons, the trial court explained the basis for its ruling denying Allstate's motion for involuntary dismissal. It further found that Mr. Stuckey was solely at fault in causing the accident, and that plaintiff made a prima facie showing that he was underinsured as to her damages. Finally, the trial court found that plaintiff was entitled to judgment against Allstate in the amount of $10,000.00 for her individual injuries, but that the total monetary amount of Morgan's damages did not exceed the applicable liability limits of $10,000.00 under Progressive's policy. Its judgment to the foregoing effect was signed on March 4, 2009.
Allstate now appeals, contending that the trial court committed legal error in holding that La. R.S. 22:1295(6) serves only to provide a procedural presumption of uninsured or underinsured status and that the trial court was also clearly wrong in factually concluding that plaintiff met her burden of proving Mr. Stuckey's underinsured status. Plaintiff answers the appeal, contending that the trial court abused its discretion in failing to award any damages against Allstate under its UIM coverage for Morgan's injuries.

ANALYSIS

Proof of a Tortfeasor's Uninsured or Underinsured Status
For purposes of UIM coverage, an underinsured motorist is one whose "automobile liability insurance on [a motor vehicle] is less than the amount of damages suffered by an insured [of the UM/UIM insurer] and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication." La. R.S. 22:1295(2)(b).
Louisiana Revised Statutes 22:1295(6) provides:

*786 In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.
(b) A sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.

(d) The effect of the prima facie evidence referred to in (a), (b) and (c) above is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.
(Emphasis added.)[3]
As demonstrated by the emphasized phrases, the statutory language quoted above relates only to the fact of existence of automobile liability insurance covering the operation of the offending vehicle, not the monetary limits of such coverage (beyond compliance with the statutory required minimum limits of La. R.S. 32:900) or its adequacy in satisfying any damages suffered by claimants. The determination of whether a vehicle (or, more properly, a motorist) is uninsured simply involves the issue of whether legally satisfactory proof has been presented to show that the motorist was operating a motor vehicle for which no policy of liability insurance was issued to its owner, or that he had no such policy issued to him or otherwise covering him for his operation of that motor vehicle. The monetary amount or quantum of damages sustained by the injured victim is irrelevant to the simple issue of whether the offending driver had no liability insurance covering him. By its literal terms, La. R.S. 22:1295(6) does not prescribe any method of establishing the *787 underinsured status of the owner and the operator of the offending vehicle, apart from establishing the uninsured status of either.
In the situation where the owner and operator are the same person, and the primary liability policy required by law has been identified, there are only a limited number of conceivable situations where additional liability coverage might exist. One obvious situation might involve an excess or umbrella policy specifically providing excess liability coverage to the owner-operator. But the existence of such excess coverage cannot be presumed, as it is not required by law. Another situation might involve coverage provided to a third person vicariously or jointly liable with the owner-operator, such as an employer. Again, however, neither the existence of such a relationship nor the existence of such additional coverage may be presumed to exist as a matter of law. As a practical matter, any attempt to apply the terms of La. R.S. 22:1295(6) to negate the existence of other applicable liability coverage would necessarily require subjective factual inquiry or conclusions as to the terms and conditions of any potential excess policy applicable to the specific factual circumstances.[4] By its terms, the statute does not specifically provide for methods of excluding such possibilities.
Even if La. R.S. 22:1295(6) may somehow properly be utilized to secure prima facie evidence of the underinsured status of the operator of the offending vehicle, nothing in its language or in the jurisprudence interpreting it suggests that it is the exclusive means of establishing that status. See Releford v. Doe, 618 So.2d 464, 466 (La.App. 4th Cir.1993), and Scherer v. Chaisson, 469 So.2d 510, 514-15 (La.App. 3rd Cir.1985); see also 15 William Shelby McKenzie & H. Alston Johnson III, Louisiana Civil Law Treatise: Insurance Law and Practice § 106 n. 4 (3rd ed.2006). Simply stated, in the case of an offending vehicle operated by its owner, once the insured claimant has proven the existence of the required primary policy of liability insurance for the offending vehicle and damages exceeding in monetary value the applicable limits of that policy, he has established a prima facie case for recovery under his UIM coverage. Absent evidence of other applicable excess liability coverage, or evidence supporting the presumption of the existence of such coverage, the insured claimant would then be entitled to recovery for the proven amount of damages exceeding the underlying liability policy limits. At that point, the burden rests with the UIM insurer to put forth evidence of other underlying liability coverage, or evidence supporting a legal presumption of such coverage, sufficient to shift the burden back to the insured claimant.[5]
In the course of investigating the accident, the investigating police officer determined that the driver of the involved pickup truck was Parrish Sterling Stuckey. At trial, both plaintiff and the investigating officer identified Mr. Stuckey's vehicle as a Ford F150 pickup truck. The investigating *788 officer confirmed its year of manufacture as 1999.
The policy at issue, introduced into evidence, was issued by Progressive to Parrish S. Stuckey as named insured. The policy period was April 13, 2006 to October 13, 2006. The declarations page lists two covered vehicles, the second being a 1999 Ford F150 pickup truck, added on April 26, 2006. The bodily injury liability coverage limits were $10,000.00 per person/$20,000.00 per accident, the minimum limits permitted by La. R.S. 32:900(B)(2).
Here, plaintiff had no need to utilize the statutory methods of proving the uninsured status of Mr. Stuckey, as she had proof that he was in fact insured by Progressive. As for her burden of proof of his underinsured status, the certified copies of Progressive's declarations page and policy agreement served to establish the monetary limits of the available liability coverage, and the testimony and other evidence relating to her damages provided the basis of the trial court's determination of the issue of whether the monetary value of those damages exceeded Progressive's liability limits. The burden then shifted to Allstate to prove the existence of other applicable liability policies in order to defeat the application of its UIM coverage. See Simon v. Reel, 03-932, p. 6 (La.App. 3rd Cir.3/3/04), 867 So.2d 174, 179. It failed to present any such proof, either in the form of direct or circumstantial evidence. Its assignment of error has no merit.

Damages
Plaintiffs granddaughter Morgan was nine years old at the time of the accident. Following the accident, Morgan complained of low back pain. She was initially seen by her pediatrician, G.J. Gelpi, M.D., who diagnosed a lower back ache and ordered x-ray films, which were reported as normal. Morgan was subsequently treated by Shay Corbin, D.C., the same chiropractor who treated plaintiff, on sixteen occasions from May 11, 2006 through September 18, 2006. Dr. Corbin diagnosed sprains or strains of the thoracic spine, lumbosacral spine, and the calves, and noted that Morgan also complained of cervical and jaw pain during the course of treatment.
In her appellate brief, plaintiff complains that the award of general damages for Morgan was inadequate, in that it "averaged only $1,705.88 per month of treatment." Certainly, the duration of a plaintiffs injury symptoms and the duration of treatment are relevant factors for a trier of fact to consider in awarding general damages. But they are not the only relevant factors; the nature and relative severity and extent of injuries are qualitative factors that must be considered. This court has previously disapproved of the use of a mathematical formula, or simple multiplication, to arrive at an appropriate award of general damages, as such a "shortcut" approach presupposes uniformity of symptoms over the course of time and fails to take account of each victim's unique and subjective injuries and course of recovery. See, e.g., Lee v. Briggs, 08-2120, p. 2 (La.App. 1st Cir.9/10/09), 23 So.3d 362, 363. Nevertheless, we find no abuse of discretion in the trial court's conclusion that Morgan's total general damages did not exceed $7,250.00 for a soft-tissue injury with gradually-decreasing symptoms over four and a half months.
We further find no manifest or legal error as to the trial court's failure to award specific damages for Morgan's "loss of enjoyment of life." The trial court evidently concluded that her acute soft-tissue injuries did not cause her a detrimental lifestyle change warranting such an award. See McGee v. AC and S, Inc., 05-1036, p. 5 (La.7/10/06), 933 So.2d 770, 775, and Oden *789 v. Gales, 06-0946, p. 14 (La.App. 1st Cir.3/23/07), 960 So.2d 114, 122. The record provides an evidentiary basis for the trial court's decision in that regard. Thus, we conclude that the plaintiffs answer to the appeal has no merit, and deny it.

CONCLUSION
The judgment of the trial court is affirmed, and the answer of the plaintiff-appellee, Regina Gillmer, to the appeal is denied. All costs of this appeal are assessed to the defendant-appellant, Allstate Insurance Company.
AFFIRMED; ANSWER TO APPEAL DENIED.
McCLENDON, J., dissents and assigns reasons.
McCLENDON, J., dissents and assigns reasons.
I respectfully disagree with the majority to the extent that it finds the filing of a liability policy issued in the tortfeasor's name that lists the involved vehicle, coupled with proof that the plaintiff's damages exceed the coverage available under said policy, without any other evidence, is sufficient to satisfy the plaintiff's initial burden of proof that the tortfeasor was underinsured.[1] While the existence of an excess, umbrella, or other policy covering the tortfeasor is not presumed, there remains the possibility that such policies exist.
Clearly, the methods provided under LSA-R.S. 22:1295(6) are not the exclusive means of establishing whether a tortfeasor is uninsured or underinsured. For instance, in Campbell v. Am. Home Assur. Co., 260 La. 1047, 258 So.2d 81 (La.1972), the court admitted as sufficient proof a letter signed by the driver's husband which stated that the defendant driver had no liability insurance. See also Dairyland Ins. Co. v. Trail, 459 So.2d 1368 (La.App. 3 Cir.1984)(defendant admitted to being uninsured in his answer) and Schexnaider v. Rome, 485 So.2d 245 (La.App. 3 Cir. 1986)(court admitted as declaration against interest testimony of broker that defendant told broker that he had no liability insurance at the time of the accident). However, in this case, no such additional evidence was offered. Although a liability policy was introduced, plaintiff failed to offer any testimony or other evidence showing that the coverage afforded Mr. Stuckey's vehicle was limited to the policy issued by Progressive.
Further, plaintiff does not assert that she was unable to locate Mr. Stuckey in order to ascertain whether any other insurance policy may have provided coverage for the accident. Contrast Boudreaux v. State Farm Mut. Auto. Ins. Co., 385 So.2d 480 (La.App. 1 Cir.), writ refused, 392 So.2d 690, 691 (La.1980), Jones v. Liberty Mut. Fire Ins. Co., 99-2990 (La.App. 4 Cir. 2/18/00), 767 So.2d 45, and Loupe v. Tillman, 367 So.2d 1289 (La.App. 4 Cir. 1979). In fact, plaintiff entered into a settlement agreement with Mr. Stuckey and Progressive and released both, but failed to obtain an affidavit, statement, or any other admissible evidence with regard to coverage.
Thus, I find the majority to be incorrect. Plaintiff's introduction of Progressive's declarations page and policy did not meet the initial burden to show that Mr. Stuckey was underinsured. As such, the burden never shifted to Allstate to prove the existence of other applicable liability policies in order to defeat application of its underinsured *790 motorist coverage. Accordingly, I respectfully dissent.
NOTES
[1] Plaintiff had the legal custody of her grand-daughter.
[2] Allstate's counsel orally moved for a "directed verdict," which may be granted in a jury trial under La. C.C.P. art. 1810, rather than for an involuntary dismissal under La. C.C.P. 1672(B), which may be granted in a bench trial. But that error is one of form rather than substance, as the ultimate object of both motions is the same. See Broussard V. Voorhies, 06-2306, p. 3 n. 1 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, 1041 n. 1, writ denied, 07-2052 (La. 12/14/07), 970 So.2d 535.
[3] At the time of the trial, this statute was designated as La. R.S. 22:680(6). It was redesignated as La. R.S. 22:1295(6) by Acts 2008, No. 415, § 1, effective January 1, 2009. No substantive changes to the language were made.
[4] For example, if the operator of the offending vehicle was in the course and scope of his employment by another person, did his employer even have any applicable automobile liability insurance? If so, was the employee operator defined or included as an insured under that policy? Was the operation of the offending vehicle actually covered under that potential excess policy? Were there any applicable exclusions?
[5] See McKenzie & Johnson, supra, § 106 ("When the insured presents prima facie evidence that the negligent driver has no liability coverage or that his liability limits are inadequate, the burden shifts to the UM [uninsured] insurer to show that there is other applicable liability coverage. . . .") [Footnote omitted.]
[1] I also respectfully disagree with the current jurisprudence from the Third Circuit that is in accord with the majority's rationale. See Scherer v. Chiasson, 469 So.2d 510 (La.App. 3 Cir. 1985) and Simon v. Reel, 03-0932, p. 6 (La.App. 3 Cir. 3/3/04), 867 So.2d 174, 179.