STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0134

ADRIEL SMITH AND SHAWN SMITH

VERSUS

ANGELIN FUNDERBURK, KRISTEN RENE HANNA, ANPAC
LOUISIANA INSURANCE COMPANY, METROPOLITAN
PROPERTY AND CASUALTY INSURANCE COMPANY AND
USAA CASUALTY INSURANCE COMPANY

Judgment Rendered: **DEC 2 2 2021**

*CHH*

\* \* \* \* \*

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 664857

Honorable William A. Morvant, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| Rick A. Caballero<br>Gail N. McKay<br>Baton Rouge, LA | Attorneys for Plaintiffs-Appellants,<br>Adriel Smith and Shawn Smith |
| | |
| Kolby P. Marchand<br>Baton Rouge, LA | Attorney for Defendant-Appellee,<br>United Services Automobile<br>Association |

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**HESTER, J.**

In this case arising out of a motor vehicle accident, plaintiff, Adriel Smith, appeals a judgment of the trial court granting a directed verdict in favor of United Services Automobile Association (USAA), Ms. Smith's uninsured/underinsured motorist (UM) carrier, finding Ms. Smith failed to prove that the offending driver was uninsured or underinsured. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On May 30, 2017, Ms. Smith, Ms. Kristen Hanna, and Ms. Angelin Funderburk were involved in a three-car accident on Highway 73 in Ascension Parish causing injury to Ms. Smith. After the accident, Ms. Smith and her husband, Mr. Shawn Smith,[1] filed suit against Ms. Hanna and her insurer, Metropolitan Property Casualty Insurance Company; Ms. Funderburk and her insurer, ANPAC Louisiana Insurance Company (ANPAC); and USAA, Ms. Smith's UM carrier.

On June 3, 2019, Ms. Smith's claims against Ms. Hanna and Metropolitan Property Casualty Insurance Company were dismissed by summary judgment, and trial was set against the remaining defendants. Thereafter, on March 18, 2020, Ms. Smith settled her claims with Ms. Funderburk and ANPAC and an order was signed on May 21, 2020, dismissing Ms. Smith's claims against Ms. Funderburk and ANPAC. After settling her claims with Ms. Funderburk and ANPAC, Ms. Smith amended her initial petition alleging that USAA was arbitrary and capricious in its refusal to make an unconditional offer and requesting penalties and attorney fees. On October 5, 2020, the matter proceeded to a jury trial solely on Ms. Smith's UM claims against USAA.[2]

---

[1] Mr. Smith dismissed his loss of consortium claim prior to trial.

[2] On the day of trial, Ms. Smith dismissed her bad faith claims against USAA prior to the start of opening statements.

2

At the close of Ms. Smith's case, USAA's attorney made a motion for a directed verdict pursuant to La. Code Civ. P. art. 1810. In support of the motion, USAA argued that Ms. Smith did not prove that Ms. Funderburk, the offending driver, was uninsured or underinsured as required by La. R.S. 22:1295. The trial court granted USAA's motion stating that a "threshold thing you have to prove in order to collect against your own UM carrier is the uninsured or underinsured status of the tortfeasor. And in this case, there's been no evidence, no testimony to establish that." A judgment was signed on November 5, 2020 dismissing Ms. Smith's claims against USAA.

On October 14, 2020, Ms. Smith filed a "Motion for Re-Consideration/New Trial." The trial court denied the motion[3] stating, "[t]he motion for new trial is denied upon showing made. [An] element of plaintiff's case was proof of the uninsured or underinsured status of the original [tortfeasor] Angelin Funderburk. Plaintiff failed to offer any evidence or testimony regarding the underinsured status of Funderburk which resulted in this court granting the motion for directed verdict. Plaintiff has not alleged a valid ground for new trial under either art 1972 or 1973."

Ms. Smith appealed contending that the trial court erred in granting USAA's motion for directed verdict and denying her motion for new trial.[4]

## LAW AND ANALYSIS

Louisiana Code of Civil Procedure article 1810 provides as follows with regard to a motion for a directed verdict:

---

[3] Initially, the motion for new trial order was unsigned. This court remanded the matter back to the trial court to address the motion for new trial, and the trial court signed the order denying the motion for new trial on August 9, 2021.

[4] When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Landry v. Leonard J. Chabert Medical Center**, 2002-1559 (La. App. 1st Cir. 5/14/03), 858 So.2d 454, 461 n.4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So.2d 761. Thus, the interlocutory denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case. **Moran v. G & G Const.**, 2003-2447 (La. App. 1st Cir. 10/29/04), 897 So.2d 75, 83 n.4, writ denied, 2004-2901 (La. 2/25/05), 894 So.2d 1148.

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

It is well settled that a trial judge has much discretion in determining whether to grant a motion for directed verdict. **State, Department of Transp. and Development v. Restructure Partners, L.L.C.**, 2007-1745 (La. App. 1st Cir. 3/26/08), 985 So.2d 212, 223, writ denied, 2008-1269 (La. 9/19/08), 992 So.2d 937. The propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. **Pratt v. Himel Marine, Inc.**, 2001-1832 (La. App. 1st Cir. 6/21/02), 823 So.2d 394, 406, writs denied, 2002-2128, 2002-2025 (La. 11/1/02), 828 So.2d 571, 572.

A plaintiff seeking to recover insurance proceeds has the burden of proving every fact essential to establish that his claim is within the policy coverage. **Espinoza v. Doe**, 2016-0424 (La. App. 1st Cir. 2/17/17), 213 So.3d 399, 401, writ denied 2017-0466 (La. 5/1/17), 221 So.3d 371; William Shelby McKenzie & H. Alston Johnson, III, 15 *Louisiana Civil Law Treatise: Insurance Law and Practice,* § 4:12. In order for an insured to recover against their UM carrier, they must first prove the UM status of the offending motorist. **Dean v. State Farm Mutual Automobile Ins. Co.**, 51,243 (La. App. 2d Cir. 4/5/17), 217 So.3d 611, 616. Louisiana Revised Statutes 22:1295(6)[5] provides different means of showing the

---

[5] Louisiana Revised Statutes 22:1295(6) provides:

In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring

uninsured or underinsured status of a motorist. If the plaintiff fails to follow these procedures, the burden remains with the plaintiff to prove such facts by any other admissible evidence. See **Gillmer v. Parish Sterling Stuckey**, 2009-0901 (La. App. 1st Cir. 12/23/09), 30 So.3d 782, 787.[6]

In her first, second, and fourth assignments of error, Ms. Smith's primary argument is that USAA's pleadings, writings, and actions, including the jury verdict form, pretrial order, and opening statement, indicated that there was no dispute about the UM status of the offending driver. Ms. Smith contends that prior to trial, USAA was aware of both her settlement with and the UM status of the offending driver, and USAA's knowledge obviated the need to prove it at trial. Ms. Smith acknowledges that she did not introduce any evidence to prove the UM status of the offending driver during the trial. Rather, Ms. Smith states that she was under the

_____

that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.

(b) A sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.

(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.

(d) The effect of the prima facie evidence referred to in Subparagraphs (a), (b), and (c) of this Paragraph is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.

[6] In her third assignment of error, Ms. Smith contends that the trial court erred in applying La. R.S. 22:1295(6) as the sole prescribed method of establishing the UM status of the offending driver. The trial court pointed out that the UM status of the offending driver is a threshold issue that must be proven before a litigant can collect from his UM carrier not that La. R.S. 22:1295(6) was the sole method of proving the UM status. Furthermore, Ms. Smith did not introduce **any** evidence of the UM status of the offending driver.

5

impression that the only issue for trial was the amount of damages.[7] Accordingly, Ms. Smith contends that the trial court erred in requiring her to establish the offending driver's UM status when the issue was not in dispute and to avoid an injustice the trial court should not have entered the directed verdict.

As noted, Ms. Smith conceded that during trial, no evidence was introduced to prove the UM status of the offending driver. The evidence introduced was primarily Ms. Smith's medical information used to prove damages. Neither Ms. Funderburk's policy with ANPAC nor Ms. Smith's settlement documents with ANPAC were introduced into the record.[8]

Ms. Smith's argument that the UM status of the offending driver was undisputed is not supported by the record. Ms. Smith, in her petition and amended petition, alleged that USAA had issued a policy of UM coverage to her but did not allege that Ms. Funderburk was uninsured or underinsured. In its answer, USAA made general denials admitting only that USAA had a policy of insurance in effect at the time of the accident. In the pretrial order, USAA listed the contested issues as "[a]ll those necessary to determine fault, **coverage**, causation, and damages." While USAA did not include the offending motorist's UM status as one of their proposed jury charges and did not raise the issue in their opening statement, USAA consistently disputed that money was owed to Ms. Smith. Notably, in a discussion with the trial court prior to trial, the parties agreed only that fault had been established, and the issues of damages and causation remained. During the hearing, USAA's attorney noted that Ms. Funderburk's fault was not at issue, but she was at issue in the case for matters like "being underinsured."

---

[7] Ms. Smith and her doctor were the only witnesses that testified during Ms. Smith's case. Ms. Funderburk was not a witness nor was her policy introduced into evidence.

[8] In sidebar with the trial court, Ms. Smith's attorney discussed the certified copies of the settlement documents between ANPAC and Ms. Smith, but did not introduce the documents into the record.

Throughout the proceeding, USAA denied liability to Ms. Smith, and USAA never made any affirmative statement or took any action indicating that the UM status of the offending driver was not at issue. The record reveals that USAA was aware of the offending driver's settlement with Ms. Smith, however, even proof of a settlement with the offending driver does not constitute proof that the offending driver's coverage has been exhausted. Further, USAA's alleged knowledge of the UM status of the offending driver does not obviate Ms. Smith's obligation to prove the UM status at trial. Once the matter proceeded to trial, it was incumbent upon Ms. Smith to prove **all** necessary elements to recover. Under the facts presented herein, we find no action or statement made by USSA waived the necessity of Ms. Smith proving the UM status of the offending driver before she could recover against USAA. Accordingly, we find the trial court was within its discretion in granting the directed verdict in favor of USAA.

In her fifth assignment of error, Ms. Smith argues that the trial court erred in failing to reopen the case to allow her to introduce evidence to establish the tortfeasor's lack of sufficient insurance coverage in response to USAA's motion for a directed verdict. In support of her position, Ms. Smith relies on **Bell v. Kristi**, 2005-1500 (La. App. 1st Cir. 6/9/06), 938 So.2d 745, 747-748, wherein this court determined that a case should be reopened for evidence of the UM status of the tortfeasor where the UM carrier paid the insured's property damages, as well as medical bills and lost wages after an accident; plaintiff alleged the UM status of the tortfeasor; the UM carrier never contested the UM status of the tortfeasor; and the plaintiff "[p]rior to the granting of the motion to dismiss" moved to reopen the case. **Bell**, 938 So.2d at 747. (Emphasis in the original.) We find that **Bell** is distinguishable from the present matter. Herein, unlike in **Bell,** Ms. Smith did not ask the trial court to reopen her case for the introduction of additional evidence prior to the trial court granting the motion for directed verdict. Ms. Smith did not request

7

that her case be reopened until she filed the motion for new trial, after the jury had been dismissed. Additionally, there was no evidence that USAA had tendered any funds to Ms. Smith or that Ms. Smith alleged the UM status of the offending driver in her pleadings.

## NEW TRIAL

In her final assignment of error, Ms. Smith contends that the trial court committed legal error in refusing to grant a new trial under La. Code Civ. P. art. 1972. A new trial shall be granted, upon contradictory motion of any party, in the following cases: (1) When the verdict or judgment appears clearly contrary to the law and the evidence; (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done. A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. Code Civ. P. arts. 1972 and 1973. The trial court's discretion in ruling on a motion for new trial is great, and its decision will not be disturbed on appeal absent an abuse of that discretion. **Guidry v. Millers Casualty Insurance Company**, 2001-0001 (La. App. 1st Cir. 6/21/02), 822 So.2d 675, 680.

The evidence attached to the motion for new trial was available before trial, not newly discovered evidence. As pointed out by the trial court, Ms. Smith did not allege a valid ground for new trial under either article 1972 or 1973. Accordingly, we find no abuse of discretion by the trial court in denying Ms. Smith's motion for new trial.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Ms. Adriel Smith.

**AFFIRMED.**