# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 03-932


**J. QUENTIN SIMON**

**VERSUS**

**JEFFERY T. REEL, ET AL**


**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2000-4854
HONORABLE JOHN D. TRAHAN, PRESIDING


**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED AS AMENDED.**

Barry L. Domingue
Simon Law Offices
122 Representative Row
P.O. Box 52242
Lafayette, Louisiana 70505
(337) 232-2000
COUNSEL OF APPELLANT:
    J. Quentin Simon


Richard J. Petre, Jr.
P.O. Drawer 3507
Lafayette, Louisiana 70502-3507
(337) 237-2660
COUNSEL FOR APPELLEE:
    Allstate Insurance Company

**COOKS, Judge.**

On March 11, 2000, J. Quentin Simon, was a back seat passenger in a Chevy Tahoe driven by Jeffery Reel. Mr. Reel ran into the rear of a vehicle driven by Margie Duplantis. When the collision occurred, Mr. Simon was thrown forward causing his chest and right shoulder to hit the front seat. Mr. Simon sued Jeffery Reel and his liability insurer, State Farm Mutual Automobile Insurance Company, Margie R. Duplantis and her liability insurer, Southern United Fire Insurance Company, and his own uninsured/underinsured motorist carrier, Allstate Insurance Company (Allstate).

Prior to trial, Jeffery Reel and his liability insurer, State Farm Mutual Automobile Insurance Company settled with Mr. Simon for the policy limits of $100,000.00. Additionally, Margie Duplantis and her insurer, Southern United Fire Insurance Company, settled with Mr. Simon. Liability was stipulated to and the only remaining issue was the amount of damages Mr. Simon was entitled to recover under his uninsured/underinsured motorist policy with Allstate.

The trial court found although Mr. Simon had a "preexisting lumbar defect and and possibly preexisting disc bulges that predisposed him to injury, he was asymptomatic prior to the accident and therefore . . . [was] entitled to damages for the aggravation of the preexisting conditions as well as for other injuries sustained in the accident." The trial court awarded past medical expenses of $17,539.86, future medical expenses of $5,000.00 and general damages of $100,000.00. Allstate was entitled to a credit of $5,000.00 for the medical payments it had already made. Mr. Simon was entitled to recover from Allstate the portion of his damages which exceeded $100,000.00. It is from this judgment that Mr. Simon appeals. We find the trial judge's award of future medical expenses and general damages are not supported by the record and, therefore, we amend the decision of the trial court. In all other respects, we affirm.

2

## LAW AND DISCUSSION

It is undisputed Mr. Simon had significant back problems prior to the accident in March 2000. He had a congenital problem in his back known as spondylolisthesis or forward vertebral slippage of L5 on the right side. Dr. Michael Heard, the treating physician, testified this condition may render an individual "more fragile to trauma and more - - it takes longer for them to get well and they get - - sometimes they just never get completely well because it's an extra - - it's like a weak link in the spine, and when there's a trauma, that weak link can be significantly aggravated and they never make a full recovery."

In addition to the congenital spinal condition, the record indicates Mr. Simon was involved in prior automobile accidents in April 1989 and May 1990. However, the trial court found, based on testimony by Dr. Heard, that Mr. Simon was asymptomatic prior to the March 2000 accident. In August 2000, after the accident in question, Mr. Simon began seeing Dr. Heard. Dr. Heard testified that he had multiple level cervical disc bulging and a disc protrusion without any nerve impingement C5-6 and at L5-S1; had bilateral slippage of the L5 vertebral body; and had ulnar nerve entrapment on the left side.

*Past medical expenses*

Mr. Simon contends the trial court erred in refusing to award the expenses associated with a hot tub and medical reports as past medical expenses. In his refusal to award the cost of buying and installing a hot tub, the trial court found "[t]here was no evidence submitted at trial that any of his doctors had prescribed or recommended that he get a hot tub for his house. The Court finds that Simon has failed to prove that the cost of purchasing and installing the hot tub are expenses necessitated by injuries he suffered in the accident." We find no error in this conclusion and, therefore, affirm the trial court's decision.

3

Mr. Simon contends the trial court erred in not awarding as medical expenses Dr. Heard's narrative reports. In *Hunter v. Kroger Co.*, 600 So.2d 837, 845 (La.App. 3 Cir. 1992), this court stated "charges for narrative reports, conference[s], and other related services apparently incurred for litigation purposes" are not items of damages. We find no error in the trial court's decision.

*Future Medical Expenses - Lumbar Surgery*

In order to recover future medical expenses, a "plaintiff must show that the medical expenses will more probably than not be incurred." *Endsley v. Pennington*, 31,027 (La.App. 2 Cir. 9/29/98), 718 So.2d 650, 653. The trial court found:

> Dr. Heard has not recommended lumbar surgery to date. He said, however, that Simon will probably need surgery sometime in the future. Surgery was suggested as a possible option in 1991. Although it may be more probable than not that Simon will eventually need lumbar surgery, plaintiff has not proved that he will likely need the surgery because of the March 2000 accident.

Despite finding Mr. Simon will need lumbar surgery in the future, the trial court only awarded $5,000.00 for future medical expenses. We find the medical evidence supports a finding that Mr. Simon's current back problems are the result of the accident of March 2000. Any future back surgery will be a direct result of the accident of March 2000 which aggravated an already fragile back condition. Dr. Heard did not recommend back surgery because he testified the type of back surgery Mr. Simon would require is extensive and dangerous. Dr. Heard testified:

> Now, he has a mechanical problem and a disc problem. So he's going to need the extreme, which will be removal of the disc, instrumentation with screws and plates, and spinal fusion. So, your trying - - you address both of the problems because he has a mechanical problem in the back and he has that disc problem. So he can't have the - - if he goes to surgery, he can't have the simple micro-discectomy with a half-inch scar on his back. That's the - - that's the least of back operations, and the extreme is the decompression - - laminectomy, decompression, discectomy, instrumentation and fusion. And that - - that's why I've been telling him - - I say you live with this as long as you can, but, you know, - - because the surgery that you're going to need, if you come to

4

surgery, is not the simple micro-discectomy. I hate to say simple because there are no simple back operations - - the lesser back operation. What he would need would be the full, blue plate special.

The type and severity of the surgery has thus far caused Mr. Simon to opt for conservative treatment. However, his congenital defect, coupled with the trauma of the March 2000 accident, makes the need for surgery in the future very probable. Dr. Heard further testified:

It's not recommended right now, but it's an option for him and it's more probable that he's going to have continued, ongoing, permanent problems in his back. He doesn't just have a back strain; he's got a - - he has a mechanical defect in his back that was pre-existing and asymptomatic that's been aggravated, and he has a small herniation in his back.

Dr. Heard testified the cost of the back surgery, including hospital, surgeon and implants would be $60,000.00. Based on the testimony of Dr. Heard, we increase the future medical expenses to $65,000.00.

*Future Ulnar Nerve Surgery*

The trial court found Mr. Simon did not prove he would incur medical expenses for ulnar nerve surgery. We find no error in this finding. Dr. Heard noted Mr. Simon was not experiencing any muscle atrophy or weakness that would have made the procedure necessary. He recommended continued conservative treatment. There was no evidence Mr. Simon's condition would likely worsen or that the procedure would be necessary in the future as a result of the March 2000 accident.

*General Damages*

In awarding general damages, the trial court failed to consider the future lumbar surgery. Louisiana law provides general damages are those which may not be fixed with exactitude. Instead, general damage awards involve mental and physical pain and suffering, inconvenience, loss of intellectual gratification and physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary

5

terms. *Montgomery v. Opelousas General Hospital*, 546 So.2d 621 (La.App. 3 Cir. 1989). The factors to be considered in assessing quantum for pain and suffering are severity and duration. *Glasper v. Henry*, 589 So.2d 1173 (La.App. 4 Cir. 1991). A tortfeasor takes his victim as he finds him and the primary objective of general damages is to restore the injured party to the state he was in prior to the accident. *Thibodeaux v. USAA Casualty Insurance Company*, 647 So.2d 351 (La.App. 1 Cir. 1994). The evidence indicates Mr. Simon sustained injury to his back which will require extensive back surgery in the future. He is currently under the care of Dr. Heard and Dr. David Barczyk, a chiropractor. We find the award of $100,000.00 excessively low and increase the award to $140,000.00. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1977).

*Uninsured/underinsured Coverage*

Allstate contends Mr. Simon failed to carry his burden of proving Jeffery Reel was an underinsured motorist under the policy. We disagree. The filing of the Allstate policy together with proof at trial that Mr. Simon's damages exceeded the policy limits was sufficient to satisfy Mr. Simon's burden of proof. Once this proof is met, the burden shifts to Allstate to show there were other applicable policies available. *Scherer v. Chaisson,* 469 So.2d 510 (La.App. 3 Cir. 1985).

*Subrogation*

Allstate contends the trial court erred by allowing Mr. Simon to recover $5,000.00 in medical expenses paid by State Farm. Allstate contends, upon payment by State Farm, State Farm became subrogated to plaintiff's rights to the extent of the $5,000.00 and the subrogation language contained in the State Farm policy enures to Allstate's benefit to prevent Mr. Simon from recovering any additional past medical expenses. We find no merit in this argument. Mr. Simon asserted his own right to recover additional past medical expenses under his own policy with Allstate.

6

**DECREE**

Based on the foregoing review of the evidence, we amend to increase, the trial court's award of future medical expenses to $65,000.00 and the general damage award to $140,000.00. In all other respects, we affirm the decision of the trial court.

**AFFIRMED AS AMENDED.**