STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-83

BRIDGET J. DOTSON

VERSUS

BROOKSHIRE GROCERY COMPANY

**********
APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 02-0475
HONORABLE J. PHILLIP TERRELL JR., CITY COURT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Glenn B. Gremillion and *John B. Scofield, Judges.

*Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore.*

AFFIRMED.

Susan Ford Fiser
P.O. Box 12424
Alexandria, LA 71315-2424
(318) 442-8899
Counsel for Plaintiff/Appellee
    Bridget J. Dotson

David A. Hughes

**Hughes & LaFleur**
**P. O. Box 1831**
**Alexandria, LA 71309-1831**
**(318) 443-4090**
**Counsel for Defendant/Appellant**
         **Brookshire Grocery Company**

GREMILLION, Judge.

The defendant, Brookshire Grocery Company, appeals the judgment of the city court finding that the plaintiff, Bridget J. Dotson, satisfied her burden of proving its liability for her slip and fall. We affirm.

## FACTS

On August 19, 2001, at 8:30 a.m., Dotson had just finished her shift as an LPN at the Veteran's Administration Hospital and was shopping at the Super One Foods in Pineville, Louisiana. The Super One Foods store is owned by Brookshire. She was in the produce department and tripped when her foot caught under a rug lining the front of a produce bin. Dotson injured her right knee as a result of this fall and was forced to seek medical care and missed a day of work.

Dotson filed suit in Pineville City Court against Brookshire seeking damages for her injury. Following a trial on the merits, the trial court took the matter under advisement and then rendered judgment in Dotson's favor, awarding her $3,188.95 in general and special damages. This appeal by Brookshire followed.

## ISSUE

On appeal, Brookshire argues that the trial court erred in finding that Dotson satisfied her burden of proof pursuant to La.R.S. 9:2800.6(B).

## MERCHANT LIABILITY

In order to prove merchant liability in a slip and fall case, the plaintiff must prove, in addition to the usual negligence requirements (duty, breach, cause in fact, and damages), those elements found in La.R.S. 9:2800.6(B):

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

1

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

Constructive notice is defined in La.R.S. 9:2800.6(C)(1) as meaning:

[T]he claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

The burden of proof remains with the plaintiff and her failure to prove any of the three above stated elements defeats her cause of action. *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081.

The reasonable care required of a merchant was discussed by the second circuit in *Jones v. Brookshire Grocery Co.*, 37,117, pp. 8-9 (La.App. 2 Cir. 5/14/03), 847 So.2d 43, 49-50:

Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers. Turner v. Brookshire Grocery Co., 34,562 (La.App. 2 Cir. 4/4/01), 785 So.2d 161; *Ward v. ITT Specialty Risk Services, Inc.*, 31,990 (La.App.2d Cir.6/16/99), 739 So.2d 251, *writ denied*, 99-2690 (La.11/24/99), 750 So.2d 987; *Leonard v. Wal-Mart Stores, Inc.*, 97-2154 (La.App. 1st Cir.11/6/98), 721 So.2d 1059. Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. *Turner, supra*; *Ward, supra*; *Tanner v. Brookshire Grocery Company*, 29,276 (La.App.2d Cir.4/2/97), 691 So.2d 871. A store owner is not liable every time an accident happens. *Turner, supra*; *Ward, supra*; *Leonard, supra*.

The merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances or conditions that might cause

2

a customer to fall. *See Hardman v. The Kroger Company*, 34,250 (La.App.2d Cir.12/6/00), 775 So.2d 1093; *Ward, supra*; *Stevens v. Winn Dixie of Louisiana*, 95-0435 (La.App. 1st Cir.11/9/95), 664 So.2d 1207. Whether measures taken are reasonable must be determined in light of the circumstances of each case. *Hardman, supra*; *Ward, supra*. As noted by the court in *Stockwell v. Great Atlantic & Pacific Tea Co.*, 583 So.2d 1186 (La.App. 1st Cir.1991) (citations omitted), the degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations.

The court further stated in regards to a trial court's finding of facts:

A trial court's findings regarding liability for damages caused by a slip and fall accident at the defendant's place of business, as well as the presence of comparative fault, are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. *Barton v. Wal-Mart Stores*, 97-801 (La.App. 3d Cir.12/10/97), 704 So.2d 361; *Myles v. Brookshires Grocery Co.*, 29,100 (La.App.2d Cir.1/22/97), 687 So.2d 668. In addition, whether a condition existed for a sufficient period of time that a merchant should have discovered the condition is a fact question; however, there remains the prerequisite showing of some time period. *Kennedy, supra*.

*Id.*

After reviewing the record in its entirety, we find no manifest error in the trial court's finding that Brookshire had constructive notice of the problems caused by these rugs and that it failed to use reasonable care to ensure that this unsafe condition did not continue.

Dotson testified that she often shops at the store in question and was aware that the rugs were maintained in front of the produce bins to prevent the floors from becoming slippery. She stated that she did not see the wrinkled rug prior to her fall, nor did she know how the rug became wrinkled or how long the wrinkle was present.

3

Billy Scarbrock, a produce stocker for Brookshire, testified that he was working at the Pineville store on the morning of August 19, 2001. He stated that his duties include stocking produce and maintaining the floors in his department. He stated that the produce department floors are cleaned every night and then are supervised by that department's employees during the day. He stated that Brookshire has long green, rubber-backed rugs in front of the produce bins which use sprinklers on the produce. Scarbrock testified that water from the sprinklers falls on the rugs, rather than the floors; thus the rugs provide a safe walkway for the customers.

When he begins work in the morning, Scarbrock testified that he places the rugs back on the floor and then begins stocking the display area. Once he reaches the end of a rack of produce, he stated that he cleans and straightens the rugs located in front of that rack. During the day, he testified that he is in and out of the storage area behind the produce section and that he regularly sweeps and straightens the rugs. He further stated that the rugs are problematic due to their thinness. He described them as being made out of a type of cloth with a rubber backing. He testified that they wrinkle up, which necessitates him going "out on the floor all the time [to] straighten them." He stated that he straightens the rugs approximately six times a day.

On August 19, 2001, Scarbrock testified that the accident occurred at approximately 9:15 a.m., the time when he just finishes stocking the area utilizing the sprinklers. He stated that he had just straightened the rugs in the area of Dotson's fall approximately five to fifteen minutes before hand, but he did not specifically look down at the rug which caused her fall. However, he stated that customers walk and roll their shopping carts over the rugs in question. Scarbrock testified that the accident

4

occurred while he was back in the storage area for approximately fifteen minutes. When he arrived back at the display area, he stated that Dotson was on the floor and that the rug was definitely wrinkled.

As evidence of the reasonable care exercised by Brookshire, Dotson introduced Brookshire Store Policy Letter #59 into evidence. With regard to accident prevention and safety rules, the letter lists five rules:

1.  All partners, as a required part of their daily duties, are to be alert to any unsafe conditions and constantly inspect the floors and displays as they work and move about the store.

2.  A member of the management team will make regular, store-wide inspections during business hours to promote a safe environment for our customers and partners.

3.  Regular SAFETY INSPECTIONS performed by the safety committee chairman should include all floor areas and shall strictly adhere to existing safety guidelines and procedures concerning floor care and maintenance. Any and all unsafe flooring conditions shall be reported on the Safety Inspection Form and sent to the Safety Coordinator immediately.

4.  Approved SAFETY FLOOR SIGNAGE shall be placed in such a manner as to provide customers with a reasonable warning and alert that possible unsafe floor conditions may exist in the immediate areas. Without exception, when an unsafe condition is detected on sales area flooring, partners should restrict the unsafe area immediately. The area must be secured before sending for or leaving an area to obtain equipment to perform the necessary clean up or repair.

5.  In an effort to enhance floor safety and provide a safe floor surface, approved FLOOR MATS will be used in certain areas of the store that have been identified by industry and company concerns as presenting higher accident-frequency history or higher potential for immediate or future injury to customers or partners.

Scarbrock admitted that the policy does not provide that inspections

5

occur at specific times or by specific persons. He stated that employees just take care of unsafe situations as they are noticed or brought to their attention.

Considering the foregoing evidence, the trial court's findings, that Brookshire had constructive notice that its produce department rugs presented a tripping hazard and that it failed to exercise reasonable care in preventing this condition from occurring, are reasonable. Brookshire's employee testified that the thinness of the rugs caused them to wrinkle easily and that they were constantly having to straighten them. Since most customers purchase produce or travel through that area while grocery shopping, and considering the ease with which these rugs wrinkled, it was reasonable for the trial court to find that Brookshire failed to exercise reasonable care in preventing this accident. The judgment of the trial court is affirmed. This assignment of error is dismissed as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendant-appellant, Brookshire Grocery Company.

**AFFIRMED.**