# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1411

QUEEN ALEXANDER, ET UX.

VERSUS

ZACHARY LABORDE, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-5072-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

## AMENDED AND, AS AMENDED, AFFIRMED.

Brian M. Caubarreaux
Brian Caubarreaux & Associates
P. O. Box 129
Marksville, LA 71351
(318) 253-0900
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Joseph Alexander
    Queen Alexander

**Staci Knox Villemarette**
**Cloyd, Wimberly & Villamarette, L.L.C.**
**Attorney at Law**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Zakery Laborde**
    **State Farm Mutual Automobile Insurance Company**

**PICKETT, Judge.**

The defendants appeal the trial court's grant of a judgment notwithstanding the verdict and increase of damages in favor the plaintiff. For the reasons discussed below, the judgment is amended and, as amended, affirmed.

**FACTS**

On June 30, 2009, Queen Alexander was stopped on La. Hwy. 1 in Marksville, waiting to make a left turn, when she was rear-ended by a vehicle driven by Zakery Laborde.[1] Ms. Alexander was seventy-three years of age at the time and had suffered back and neck pain for many years before the accident. She sued Mr. Laborde and State Farm Mutual Automobile Insurance Company (State Farm), which insured the vehicle driven by Mr. Laborde when the accident occurred, contending the accident caused an aggravation of her pre-existing physical problems and a disc herniation at L4-5 that resulted in spinal stenosis that requires surgery. She sought to recover damages associated with the aggravation of her pre-existing problems and with the surgery.

At trial on June 22, 2011, the defendants stipulated that Mr. Laborde was solely at fault in causing the injury and that a policy of liability insurance issued by State Farm, which was in full force and effect at the time the accident occurred, provided insurance for the accident. After deliberating, the jury returned a verdict in favor of Ms. Alexander and awarded her the following damages:

| | |
|---|---:|
| Medical Expenses to Date of Trial | $ 21,586.31 |
| Future Medical Expenses | 110,619.00 |
| Past Pain and Suffering | 12,000.00 |
| Future Pain and Suffering | 25,000.00 |
| Past Mental Anguish | 2,000.00 |
| Future Mental Anguish | 2,000.00 |
| Loss of Enjoyment of Life | 0.00 |
| Future Loss of Earnings | 52,000.00 |
| TOTAL | $ 225,205.311 |

---

[1] Mr. Laborde's first name was misspelled as "Zachary" in Ms. Alexander's Petition for Damages. We use the proper spelling of his name herein.

Ms. Alexander filed a Motion for Judgment Notwithstanding the Verdict (JNOV) and alternatively a Motion for New Trial and/or Additur, asserting the jury's award of general damages was grossly inadequate in light of the evidence presented at trial. The trial court granted a JNOV and increased Ms. Alexander's total general damage award from $93,000.00 to $300,000.00. Specifically, the trial court increased the jury's awards for past and future physical pain and suffering from $37,000.00 to $250,000.00, past and future mental anguish from $4,000.00 to $25,000.00, and loss of enjoyment of life from $0 to $25,000.00. Mr. Laborde and State Farm appealed.

### ASSIGNMENTS OF ERROR

Mr. Laborde and State Farm assign the following errors:

(1) The Trial Court erred by awarding future surgery costs to Queen Alexander.

(2) The Trial Court erred by granting a JNOV in favor of Queen Alexander.

### DISCUSSION

Ms. Alexander, a school teacher, testified she suffered from back pain from the time she was young and worked in the cotton fields on her family's farm. She further testified that she injured her back in December 1992 when she fell out of a chair while teaching. She continued working until June 1994, when she retired due to continued back and leg pain. She returned to work, however, in 1998 and was working at the time of trial.

The record established that Ms. Alexander persevered through many years of suffering back pain and that she also suffered neck pain on occasion but to a lesser extent than back pain. For many years, Ms. Alexander sought chiropractic treatment to relieve her back pain. After the June 2009 accident, Ms. Alexander increased her chiropractic treatment with Dr. Harold Travis Lacassin and used nonnarcotic pain killers to alleviate the increased pain she suffered as a result of the accident.

Dr. Lacassin began treating Ms. Alexander in 2004, when he acquired her prior chiropractor's practice. On her first visit after the accident, Ms. Alexander complained of severe back and neck pain; she also complained of pain in her right arm and left leg. She rated her pain level at eight to nine on a scale of ten. On her visit prior to the accident, she had rated her pain level at two to three on a scale of ten.

Dr. Lacassin testified that during his years of treating Ms. Alexander, he was able to maintain her pain level fairly consistently at a level she found acceptable that allowed her to continue working and performing her normal daily activities. He explained that while she occasionally had flare-ups when her pain levels increased and she required more frequent treatment for a period of time, her pain would subside.

Immediately after the accident, Ms. Alexander complained to Dr. Lacassin that her neck was her major source of pain. With treatment, her complaints of neck pain lessened, but Dr. Lacassin testified her neck never returned to its pre-accident status. After her neck pain lessened, Ms. Alexander's complaints of back pain increased. Initially, she responded well to Dr. Lacassin's treatment for her back. She regressed, however, and her back worsened. Dr. Lacassin testified that after the accident, Ms. Alexander complained of back pain more consistently and rated her pain at a higher level than she did before the accident. He was concerned and recommended an MRI of her neck and back. After reviewing the MRI, Dr. Lacassin recommended Ms. Alexander obtain a second opinion.

Ms. Alexander sought a second opinion from Dr. Louis Blanda, an orthopedic surgeon. Dr. Blanda testified Ms. Alexander's MRI showed arthritic changes in her low back and a herniated disc at L4-5 that combined to create spinal stenosis. According to Dr. Blanda, the MRI also showed arthritic changes at L5-S1, a bulging disc and degeneration in her neck, and three herniated discs in her neck. A CAT scan showed the spinal stenosis at L4-5 was moderate to severe.

Dr. Blanda first recommended conservative treatment for Ms. Alexander. He later ordered a myelogram with CT scan because her complaints worsened and she reported trouble walking. Dr. Blanda testified the myelogram showed the compression at L4-5 was worse than the MRI revealed. Ms. Alexander continued to complain of right and left leg pain, and an EMG revealed right-sided S1 radiculopathy and L5 changes on both the right and left. Dr. Blanda testified the condition was severe and needed to be addressed surgically, explaining it was progressive and, without surgery, could result in severe neurological problems, including paralysis. He stated a decompression and double fusion at L4-5 was needed.

Dr. Blanda opined that the disc herniations in her neck and at L4-5 were caused by the accident. He based his opinion on Ms. Alexander's history, Dr. Lacassin's outline of her complaints during the five years before the accident, and the medical records of his partner, Dr. John Cobb, who treated Ms. Alexander in 1993. Dr. Cobb's records included a 1993 MRI that showed spondylosis at L5-S1 and a slight bulge at that level but nothing at L4-5.

Dr. Stanley Foster, also an orthopedic surgeon, examined Ms. Alexander at State Farm's request. Dr. Foster agreed that Ms. Alexander's back and neck conditions were aggravated by the accident and that she needed surgery. He testified spinal stenosis is a complex problem that results from the aging process and that changes associated with stenosis do not occur in an accident. He explained that he did not relate the herniation at L4-5 to the accident because of the fifteen-year interim between the MRI ordered by Dr. Cobb and her 2010 MRI. He further explained that if the disc herniation at L4-5 was acute, there would be a "whiteness" or high intensity on the MRI in that area. In his opinion, there was no such whiteness on the MRI; therefore, the changes were degenerative, not acute. Dr. Foster reluctantly agreed, however, that the aggravation of Ms. Alexander's back condition "could be" the catalyst for the surgery and that she might not ever need surgery otherwise.

4

**Future Surgery Costs**

The defendants assert the jury's award of future surgery costs constitutes error for two reasons: (1) the jury believed Ms. Alexander's attorney's assertion that taxpayers would pay for her surgery through Medicare if State Farm did not pay her for it, and (2) Ms. Alexander failed to establish by a preponderance of the evidence that the surgery was related to the injuries she sustained in the accident.

The defendants did not object to Ms. Alexander's counsel's statements regarding Medicare and Medicare Set-Asides and her claim for future medical expenses. Their failure to object when the argument was made resulted in a waiver of this complaint for appeal. *Brown v. State ex rel. LSU Med. Ctr. Health Care Servs. Div.*, 08-273 (La.App. 3 Cir. 2/10/08), 998 So.2d 367, *writ denied*, 09-72 (La. 3/6/09), 3 So.3d 491. Moreover, the trial court also explained that any amount awarded to Ms. Alexander for future medical treatment "may be required to be deposited into a special account or Medicare set[-]aside account as determined by Medicare" in order to protect Medicare's interest in the event she did undergo surgery. The defendants did not object to the jury instructions either. For these reasons, this assignment lacks merit.

The defendants next argue the jury's award of future medical expenses for the surgery recommended by Dr. Blanda was erroneous because while Ms. Alexander testified she planned to have the surgery, she had not scheduled the surgery and had not made a deposit for the surgery. They also urge her testimony that she had notified the school board she did not plan to work the next school year to have the surgery performed was not credible because the written notice she claimed she delivered sent to the school board was not in her employee file.

To prove she was entitled to an award of future medical expenses, Ms. Alexander had to show more probably than not that the expenses were necessitated by the accident, the probable cost of the expenses, and that they would be

5

incurred. *Guidry v. Allstate Ins. Co.*, 11-517 (La.App. 3 Cir. 12/21/11) 83 So.3d 91, *writ denied*, 12-225 (La. 3/30/12), ___ So.3d __ .

Dr. Blanda testified surgery is necessary to prevent a more serious condition from developing that could cause paralysis; he also testified the cost of the surgery and the required follow-up care is $110,619.00. Dr. Foster agreed the surgery was necessary. He also agreed, albeit reluctantly, that the surgery "could be" necessitated by the aggravation of Ms. Alexander's preexisting condition and that the aggravation was caused by the accident. The doctors' testimony satisfied the first prong of Ms. Alexander's burden of proving she was entitled to recover medical expenses.

Whether Ms. Alexander will have surgery and incur the costs of it was a credibility determination for the jury. Credibility evaluations are for the fact finder and can be reversed only if the evidence shows they are manifestly erroneous or clearly wrong. *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So.3d 1218. Unless "documents or objective evidence so contradict the witness's story, or the story is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witnesses's story," a factfinder's determination based on a credibility determination "can virtually never be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989).

We do not find Ms. Alexander's failure to schedule the surgery, to make a deposit on the surgery, or to prove she had provided written notification to the School Board of her intent to take one year off of work to have the surgery sufficient to render her testimony so internally inconsistent or implausible on its face that a reasonable fact finder would not accept her testimony as true. Moreover, although the defendants went to great lengths to show the jury that Ms. Alexander was not credible, the jury did not agree. Accordingly, we find no manifest error with the jury's conclusion that the surgery was necessitated by the accident and that Ms. Alexander intended to have the recommended surgery.

6

**Judgment Notwithstanding the Verdict**

State Farm next urges the trial court erred in granting Ms. Alexander a JNOV. In *Lastrapes v. Progressive Security Insurance Co.*, 10-51, p. 5 (La. 11/30/10), 51 So.3d 659, 662 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 00-628, 08-770, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99), the supreme court explained the principles to be applied in determining whether JNOV was appropriate:

> JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.

The criteria used to determine whether a JNOV should be granted are the same criteria used to determine whether a trial court's grant of JNOV was improper. *Forbes v. Cockerham,* 08-762 (La. 1/21/09), 5 So.3d 839. Hence, we must determine whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *Id.* If we find that reasonable persons could reach a different conclusion, the trial court erred in granting the motion, and the jury verdict should be reinstated. *Id.*

After finding the JNOV was appropriate, the trial court had "to make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case." *Anderson v. New Orleans Public Serv., Inc.*, 583 So.2d 829, 834 (La.1991). An appellate court can only disturb a trial court's assessment of damages if the record clearly establishes that it abused its discretion in

making its assessment. *Id.* (citing *Coco v. Winston Ind., Inc.*, 341 So.2d 332 (La.1976)).

As the trial court observed, the jury's damage awards for future medical expenses and future lost wages show it believed that the medical testimony established, at the least, that the accident aggravated her pre-existing medical condition such that she now needs surgery and that Ms. Alexander will have the surgery. Based on this determination, the trial court concluded a JNOV was warranted because the jury's damage awards were abusively low. We have considered the entire record and find no error with the trial court's conclusions that the jury's general damage awards were abusively low; however, we do find the trial court's award of $300,000.00 to be an abuse of discretion in light of the pre-existing condition of Ms. Alexander's neck and back. Therefore, we must now determine the lowest acceptable award of general damages under the particular facts. *Guillory v. Lee*, 09-75 (La. 6/26/09), 16 So.3d 1104.

We are aware of our determination in *Smoot v. Hernandez*, 08-1121 (La.App. 3 Cir. 3/4/09), 6 So.3d 352, that an award of $250,000.00 to a plaintiff who had pre-existing back problems and suffered a two-level disc herniation for which she had a lumbar fusion was not an abuse of discretion. Having reviewed the facts of both cases, we find *Smoot* is not indicative of what is an appropriate award in this case. In *Smoot*, there was no doubt the herniated discs were caused by the subject accident and alone necessitated the surgery. That is not the case here. Dr. Blanda testified that the herniated disc at L4-5 exacerbated Ms. Alexander's pre-existing problems and made the pre-existing stenosis progress more rapidly than it would have otherwise. Additionally, while the plaintiff in *Smoot* had pre-existing back and neck problems, the record there did not show degeneration in her neck and back as extensive as Ms. Alexander's.

We also reviewed damage awards in *Deville v. Frey*, 10-1290 (La.App. 3 Cir. 5/4/11), 63 So.3d 435, *writ denied* 11-1157 (La. 9/23/11) 69 So.3d 1158, and *Jones v. Martinez*, 07-24 (La.App. 3 Cir. 10/24/07), 967 So.2d 1205. In *Deville*, another panel of this court also distinguished *Smoot* and determined an award of $100,000.00 for the aggravation of a pre-existing back injury and a shoulder injury was appropriate. In *Jones*, the trial court's award of $70,000.00 in general damages for injuries sustained in an accident that aggravated a pre-existing injury and hastened the degeneration of the plaintiff's back condition to the extent that back surgery was required was found to be inadequate. The panel determined $125,000.00 was the lowest award reasonable under the circumstances.

Having considered these similar cases, we find $125,000.00 is the lowest acceptable award for general damages in light of Ms. Alexander's pre-existing back and neck problems and her need for surgery.

## DISPOSITION

Finding no error with the trial court's grant of judgment notwithstanding the verdict on the issue of damages, we amend the trial court's award of general damages from $300,000.00 to $125,000.00. All costs associated with this appeal are assessed to Zakery Laborde and State Farm Mutual Automobile Insurance Company.

**AMENDED AND, AS AMENDED, AFFIRMED.**