# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

**13-1063**

PATRICIA ANN THOMPSON

VERSUS

WINN-DIXIE MONTGOMERY, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**SIXTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF IBERIA, DOCKET NO. 112-884-C**
**HONORABLE JOHN CONERY, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett, Billy H. Ezell, and James T. Genovese, Judges.

**JUDGMENT AMENDED AND RENDERED AS AMENDED.**
**PICKETT, J., concurs in part, dissents in part and assigns written reasons.**

Pride J. Doran
Quincy L. Cawthorne
Chris B. Lear
Doran & Cawthorne Law Firm, PLLC
P. O. Box 2119
Opelousas, LA 70571
(337) 235-3989
**ATTORNEY FOR PLAINTIFF/APPELLANT**
**Patricia Thompson**

David J. Calogero
Davidson, Meaux, Sonnier, McElligott,
Fontenot, Gideon & Edwards
P. O. Box 2908
Lafayette, LA 70502-2908
(337) 237-1660
**ATTORNEY FOR DEFENDANT/APPELLEE**
**Winn Dixie Montgomery, Inc.**

**Cooks, Judge**

## FACTS AND PROCEDURAL HISTORY

Patricia Ann Thompson (Plaintiff) slipped and fell while shopping at a Winn-Dixie store in New Iberia, Louisiana, when she walked across a wet area on the floor in the frozen meat section of the store. Water covered an area of the floor approximately four feet wide by two feet in length and was seeping from underneath a floor mat measuring three feet in width by ten feet in length. Plaintiff was injured in the fall. She was recovering from a recent back surgery at the time of the fall and had to undergo another back surgery after the fall. She continues to incur medical costs as a result of this injury.

Winn-Dixie attempted to have the leaking meat case repaired multiple times over the preceding months. The store maintenance was provided for pursuant to a contract between Winn-Dixie and Southern Cleaning Services, Inc. (Southern). Southern, in turn, sub-contracted the maintenance work to a cleaning service owned by Mildred Caldwell, d/b/a KAP Cleaning Service (KAP). KAP's employee, Veronica Hausner, was assigned to this Winn-Dixie store but was not informed about the recurrent leakage problem with the refrigerated meat cases. Plaintiff settled with KAP prior to trial, and a judgment of dismissal was entered accordingly. Winn-Dixie pled the affirmative defense of third-party negligence alleging KAP was partly at fault for Plaintiff's injuries. The jury found KAP seventy percent at fault and Winn-Dixie thirty percent at fault.

The jury returned a verdict awarding damages to Plaintiff in the amount of $63,345.83 for past and future medical expenses, $10,000.00 for pain and suffering and mental anguish, and $10,000.00 for loss of enjoyment of life. Winn-Dixie filed a Motion for Judgment Notwithstanding the Verdict and a Motion to Tax and Award Costs. Plaintiff filed a Motion for Judgment Notwithstanding the Verdict

or Alternatively for Additur or New Trial. The trial court denied both parties' Motions for Judgment Notwithstanding the Verdict and cast part of the costs on Plaintiff. Both parties appealed. Subsequent to filing its Motion for Suspensive Appeal, Winn-Dixie's appeal was dismissed for abandonment under the provisions of La.Code Civ.P. art. 2126. The judgment dismissing Winn-Dixie's suspensive appeal reserved Winn-Dixie's right to "seek modification, revision, or reversal of the final judgment by answer to the Plaintiff's appeal." Winn-Dixie timely filed an answer to Plaintiff's appeal.

## LAW AND ANALYSIS

The imposition of tort liability against a merchant for a patron's injuries resulting from an accident on the merchant's premises is governed by the Claims Against Merchants statute, La.R.S. 9:2800.6. *Davis v. Wal-Mart Stores*, 00-0445 (La. 11/28/00), 774 So.2d 84; *Melton v. Smith*, 41,456 (La.App. 2 Cir. 9/20 06), 940 So.2d 89.

*Milton v. E&M Oil Co.*, 45,528, p. 5 (La.App. 2 Cir. 9/22/10), 47 So.3d 1091, 1094-95.

Louisiana Revised Statutes 9:2800.6 (emphasis added) provides:

A. *A merchant owes a duty* to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. *In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:*

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) *The merchant* either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) *The merchant* failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if *the merchant* had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) *"Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. …*

Thus, as this court held in *Peoples v. Fred's Stores of Tennessee, Inc.*, 09-1270, p. 18 (La.App. 3 Cir. 6/2/10), 38 So.3d 1209, 1221, *writ denied*, 10-1882 (La. 10/29/10), 48 So.3d 1090, "[i]n order to prove merchant liability in a slip and fall case, the plaintiff must prove, in addition to the usual negligence requirements (duty, breach, cause in fact, and damages), those elements found in La.R.S. 9:2800.6(B). *Dotson v. Brookshire Grocery Co.*, 04-83, p. 1 (La.App. 3 Cir. 5/12/04), 872 So.2d 1283, 1285."

Plaintiff asserts the jury manifestly erred in finding Winn-Dixie only thirty-percent at fault, maintaining that the facts do not support this finding and maintaining that Louisiana law imposes a statutory duty on "the merchant" to provide a safe place. Defendant asserts we must examine the jury's apportioning of fault under the manifest error standard of review and absent manifest error we may not disturb the jury's finding. We find the law statutorily imposes liability on Winn-Dixie, "the merchant," in a slip-and-fall accident that occurred on its premises. The law does not make any provision allowing Winn-Dixie to delegate its statutorily imposed duties by contracting with third-parties. Were this not so, every grocery store in the state could seek to avoid their statutory duties to

3

shoppers to provide a safe place to shop by contractually assigning its responsibilities to third-party contractors such as the small, financially impecunious sub-contractor, KAP, in this case. Winn-Dixie is statutorily liable to Plaintiff for one-hundred percent of the damages occasioned by its negligence when, as here, its breach of duty caused Plaintiff injury. Thus, we find the jury erred as a matter of law in concluding that Winn-Dixie is only thirty percent at fault for this accident.

We note additionally, that while it is true that our courts have generally held that a party is not liable for the acts of its independent contractor, there are exceptions to this general rule which apply to Winn-Dixie in this case:

> Under Louisiana law, a principal is generally not liable for the offenses committed by an independent contractor while performing its contractual duties. *Loftus v. Kuyper*, 46,961 (La.App. 2 Cir. 3/14/12), 87 So.3d 963. . . . This rule is subject to two exceptions. First, the principal may not avoid liability for injuries resulting from an ultra-hazardous activity by hiring out the work to an independent contractor. *The second exception arises when the principal reserves the right to supervise or control the work of the independent contractor* or gives express or implied authorization to an unsafe practice. *Ewell v. Petro Processors of La., Inc*. 364 So.2d 604 (La.App. 1 Cir. 1978), *writ denied*, 366 So.2d 575 (La. 1979).
>
> . . . .
>
> The first part of the second exception arises *when the principal reserves the right to supervise or control the work of the independent contractor.*

*Isgitt v. State Farm Ins. Co*., 13-204, (La.App. 3 Cir. 10/16/13) (unpublished opinion) (emphasis added)

Here, Winn-Dixie reserved the right to supervise and control the work of the independent contractor, Southern, and it, in turn, made this requirement part of its contract with KAP. The "Agreement for Floor Care Janitorial Services" provided that Winn-Dixie reserved the right to determine the color and type of uniform the cleaning personnel were required to wear when working in its stores; the right to

4

set the schedules for all employees of the contractor, Southern, or sub-contractor, KAP, working in its stores; the right to change the days/hours of cleaning services; the right to conduct un-announced inspections

> . . . of any contracted cleaning agents, assistants, employees, laborers, or subcontractors and his or her property. This includes, but is not limited to personal property, lunch pails, knapsacks, outerwear, boxes, brief cases, pails, scrubbers, etc. These inspections will be un-announced and may be conducted by COMPANY's [Winn-Dixie's] loss prevention, security or Store Location personnel; , , ,

Further, in a document entitled "Specific Janitorial Services," which was a detailed list attached to the Agreement, each and every item of work to be performed, along with the frequency of each detailed item of work to be performed by the person supplied by the "independent contractor." Thus, Winn-Dixie clearly maintained the right to control and supervise the work of the KAP's employee and is therefore not shielded from its statutory liability to Plaintiff. Further, as this court explained in *Dotson*, 872 So.2d at 1285-86 (quoting *Jones v. Brookshire Grocery Co.*, 37,117, pp. 8-9 (La.App. 2 Cir. 5/14/03), 847 So.2d 43, 49-50, emphasis added, citations omitted):

> *Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers.* Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. A store owner is not liable every time an accident happens.

> *The merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances or conditions that might cause a customer to fall.* Whether measures taken are reasonable must be determined in light of the circumstances of each case. As noted by the court in *Stockwell v. Great Atlantic & Pacific Tea Co.*, 683 So.2d 1186 (La.App. 1st Cir. 1991), the degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations.

Winn-Dixie's contractual agreement for cleaning services was worded so as to insure no interference from the independent contractor and/or its sub-contractor with Winn-Dixie's statutorily imposed duties to its customers. Winn-Dixie and its contractor for cleaning services are free to agree, as they did here, to require indemnification by the independent contractor to Winn-Dixie for negligent or intentional acts of its agents, employees or sub-contractors, and that Winn-Dixie would be held harmless for damages resulting from the contractor's or sub-contractor's negligent acts or tortious conduct. Be that as it may, Winn-Dixie cannot escape its statutorily imposed duty to its patrons in a premises slip-and-fall claim merely by entering into a third-party contract to provide cleaning services at its stores. Even its own contract includes much authority for Winn-Dixie to exercise control and supervision over these independent contractors so that Winn-Dixie can be assured of its ability to meet *its duty* to *its patrons* to provide a safe place to shop free from unreasonable risks of harm.

On reviewing the record, we find the evidence amply supports a finding that Plaintiff's injuries resulted from Winn-Dixie's failure to provide a safe place to shop. Winn-Dixie's manager on duty on the evening of Plaintiff's fall confirmed there was a wet area on the floor at the time that Plaintiff fell. He further confirmed that the mats placed on the floor to avoid a customer slipping on water leaking from the display cases were smaller in size than the area of water on the floor where Plaintiff fell. This is not consistent with Winn-Dixie's own safety-mat program designed for the safety of patrons shopping in its stores. Documents entered into evidence show Winn-Dixie knew its display cases were leaking months before this incident and that its attempts to rectify the problem were not working. Despite these facts, Winn-Dixie failed to offer evidence to show that the independent cleaning contractor, working under its supervision and control, was

6

informed of the leaking problem. Additionally, the record shows Winn-Dixie's procedures for maintaining this area were not followed on the evening Plaintiff slipped and fell, and Winn-Dixie's manager on duty that evening did not perform the required policy of walking the store every thirty minutes to guard against such hazards. This was especially important given Winn-Dixie's knowledge of the persistent problem with water leakage on the floor in front of its display cases. Plaintiff met her burden to prove that Winn-Dixie failed to meet its statutory duty to her to provide a safe place to shop. Plaintiff proved the elements necessary to recover damages from Winn-Dixie. No evidence forms any basis to assign any negligence to Plaintiff.

We also find Plaintiff was injured as a result of her fall in Winn-Dixie's store. The medical evidence shows Plaintiff was recovering from a lumbar laminectomy and foraminotomy at the time of her fall. This surgical procedure was performed on July 1, 2008. According to Plaintiff's expert witnesses, that surgery was successful and left her doing well. According to the expert testimony of Plaintiff's treating physicians, Plaintiff experienced increased pain and a worsening of her symptoms after her fall in the Winn-Dixie store on July 21, 2008. Plaintiff had a second surgery after the incident at Winn-Dixie and later began treatment with a pain management doctor, Dr. Michael J. Jennings (Dr. Jennings). Based upon his hands-on interaction with Plaintiff, his consideration of Plaintiff's medical records, and the reports of her other treating physicians, Dr. Jennings testified it is more probable than not that Plaintiff's fall at Winn-Dixie caused or contributed to her increased pain and precipitated Plaintiff's second back surgery, which was performed by Dr. Thomas Bertuccini (Dr. Bertuccini). Dr. Bertuccini's findings are consistent with that opinion. Dr. Jennings further testified he continues to treat Plaintiff for severe pain and depression and, as a result of the fall

at Winn-Dixie, Plaintiff's preexisting condition was aggravated causing or contributing to her need to have pain management/treatment for the remainder of her life. Plaintiff is now fifty-four years old.  According to Dr. Jennings, Plaintiff's on-going treatment will include at least four annual office visits, constant monitoring of prescribed pain medications, including necessary laboratory tests/blood work, and at least two epidural steroid injections a year. According to Dr. Jennings' and Dr. Bertuccini's records Plaintiff has continued to experience pain in her low back which radiates through her buttocks and down her leg, weakness in her leg muscles, and constant nerve pain since the accident at Winn-Dixie.

Dr. Jennings noted Plaintiff's drug regimen includes Percocet, Flexeril, Voltaren, Cymbalta, Tylox (an oxycodone drug), Advil, Lyrica and Neurontin. She had to stop taking Lyrica because it caused her nausea, vomiting, and trembling, all common side effects of that drug. He tried her on Neurontin, an epileptic drug, but it too caused her to tremble and to experience nausea, vomiting, light headedness, sleeplessness, and memory loss. He testified this drug is a mainstay for treating Plaintiff's type of nerve pain.  He further explained that Plaintiff's pain requires anti-inflammatory medication to help with muscle and bone pain in addition to the medications for nerve pain.  He explained that the scar tissue as a result of her back surgeries "hurts dramatically" requiring a different type of pain medication.  Additionally, he testified he prescribed Cymbalta to Plaintiff because it addresses two problems at once. First, it makes her less sensitive to her constant pain directly inhibiting the pain from traveling up the spinal cord to the brain. Second, it works as an anti-depressant which is necessary in treating Plaintiff.  He testified that Plaintiff, like all patients who suffer from

8

chronic pain as a result of injury, suffers from depression. He explained that her depression, like most patients similarly injured, is caused by "grieving because of what they've lost because they can't do what they want to do. Their (sic) not as active as they want to be. There is a loss. That loss transmit (sic) – translates into depression." According to Dr. Jennings, "There isn't a pain patient alive who's not depressed at some level." Plaintiff is affected to such a degree that he referred her to a psychiatrist to help with her high level of anxiety which made Plaintiff emotional enough to cry on some of her visits with him. He testified that he will have to monitor her closely to avoid her developing an addiction to her pain medications which means he will have to limit the amount she can be given. He also explained Plaintiff attends physical therapy sessions which help to strengthen her bones but cannot relieve her nerve pain.

Dr. Jennings explained it is necessary to use four major methods of treating Plaintiff's nerve pain in her back. In addition to the medication regimens and physical therapy described, she requires epidural steroid injections which only produce short-term relief from as little as two weeks to perhaps a month, then the pain "goes right back up." He explained that these injections are "not a nice drug" and must be used sparingly because they cause many problems including cataracts, muscle weakness, osteoporosis, diabetes, weight gain, water gain, and "all kinds of bad things." He limits patients such as Plaintiff to no more than four injections per year because the negative side effects of more injections far outweigh the benefits.

In *Simon v. Reel*, 03-932, (La.App. 3 Cir. 3/3/04), 867 So.2d 174, we discussed the law applicable to an award for medical costs and general damages. In *Simon,* the plaintiff had a congenital problem with his back which made him more susceptible to injury or trauma. Additionally he was involved in two

9

automobile accidents prior to the accident at issue. Unlike Plaintiff in this case, the plaintiff in *Simon* did not have the recommended surgery on his back prior to trial, but the evidence showed that the trauma from the accident coupled with the preexisting condition made the need for surgery "very probable." *Simon*, 867 So.2d at 178. The trial court awarded the plaintiff $17,539.86 for past medical expenses, $5,000.00 for future medical expenses, and $100,000.00 in general damages. In *Simon*, this court also found the jury award abusively low and increased the award for future medicals to $65,000.00 based on the plaintiff's treating physician's testimony, and increased the award for general damages from $100,000.00 to $140,000.00.

> Louisiana law provides general damages are those which may not be fixed with exactitude. Instead, general damage awards involve mental and physical pain and suffering, inconvenience, loss of intellectual gratification and physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. *Montgomery v. Opelousas General Hospital*, 546 So.2d 621 (La.App. 3 Cir. 1989). The factors to be considered in assessing quantum for pain and suffering are severity and duration. *Glasper v. Henry*, 589 So.2d 1173 (La.App. 4 Cir. 1991). A tortfeasor takes his victim as he finds him and the primary objective of general damages is to restore the injured party to the state he was in prior to the accident. *Thibodeaux v. USAA Casualty Insurance Company*, 647 So.2d 351 (La.App. 1 Cir. 1994).

> We find the award of $100,000.00 excessively low and increase the award to $140,000.00. *Coco v. Winston Industries, Inc.* 341 So.2d 332 (La.1977).

*Simon*, 867 So.2d at 178-79.

In *Alexander v. Laborde*, 11-1411(La.App. 3 Cir. 6/6/12), 97 So.3d 1081, a panel of this court again addressed the appropriateness of a jury's award in a personal injury case involving aggravation of a preexisting back condition. In *Alexander*, authored by Judge Pickett, this court held that the fact the jury awarded damages for future medical expenses and future lost wages, at the least, indicated

the jury believed the accident at issue aggravated plaintiff's pre-existing medical condition. In this case, the fact that the jury awarded Plaintiff past and future medicals, as well as an amount of damages for past, present, and future pain and suffering, and future loss of enjoyment of life, indicates the jury, at the very least, believed the fall in Winn-Dixie aggravated Plaintiff's preexisting condition. Based on the record, we agree that Plaintiff's fall in Winn-Dixie aggravated her preexisting condition.

In *Alexander*, after reviewing damage awards in *Deville v. Frey*, 10-1290 (La.App. 3 Cir. 5/4/11), 63 So.3d 435, *writ denied* 11-1157 (La.9/23/11), 69 So.3d 1158, and *Jones v. Martinez*, 07-24 (La.App. 3 Cir. 10/24/07), 967 So.2d 1205, our court "determined $125,000.00 was the lowest award reasonable under the circumstances." *Alexander*, 97 So.3d at 1087. In *Deville*, a panel of this court awarded $100,000.00 as the lowest amount reasonable for aggravation of a preexisting back injury and shoulder injury. In *Jones*, a panel of this court awarded $125,000 for aggravation of a preexisting back injury as the lowest amount reasonable under the circumstances.

In *Abshire v. Wilkenson*, 01-75 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158, a panel of this court increased the award for medical costs and general damages to a plaintiff who was injured in an accident when leaving his chiropractor's office where he was being treated for a pre-existing back condition.

> A defendant takes his victim as he finds him. Thus, it follows that the defendant is responsible for all natural and probable consequences of his tortious actions. *Bryan v. City of New Orleans*, 98-1263 (La.1/20/99); 737 So.2d 696; *Foster v. Cohen*, 99-98 (La.App. 3 Cir. 6/30/99), 742 So.2d 47, *writ denied*, 99-2290 (La.11/12/99), 750 So.2d 196. The jury rendered a verdict awarding Daniel $9,980 in past medical expenses from the date of the accident through his treatment with Dr. DeAraujo. Since Dr. DeAraujo testified that any surgery performed from an anterior approach would not be

related to the accident, the jury obviously decided that Daniel's treatment prospective to this appointment was not accident related. However, we find that the jury was clearly wrong in not awarding Daniel medical expenses for treatment he received after Dr. DeAraujo's examination.

Drs. Goldware, DeAraujo, and Foster all agreed that the accident aggravated Daniel's preexisting condition and resulted in the need for surgery. Drs. Daigle and Cenac further stated that he was not a surgical candidate prior to the accident. Thus, although he may have required surgery at some point in the future, Daniel is entitled to recover medical expenses for his surgery and post-surgical care since these were a consequence of the July 9, 1998 accident. Accordingly, the judgment of the trial court is amended to award Daniel past medical expenses of $77,991.20.

In reviewing a general damages award, our first inquiry is whether the "award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Youn v. Maritime Overeseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.* at 1261. If the amount awarded is abusively low, we raise the award to the lowest amount "reasonably within that discretion." *Id.* at 1260.

Considering the evidence, we find the jury's award of $5,000 for the general damages abusively low. After reviewing cases involving similar injuries, we find that the lowest amount reasonably within the jury's discretion is $150,000.00.

*Abshire*, 787 So.2d at 1167-68 (citations omitted).

Reviewing the record in this case we find the jury's award of $63,345.83 for both past and future medical expenses was abusively low. Plaintiff asserts her past medicals attributable to the injuries caused by her fall in Winn-Dixie totaled $78,345.83. Defendant asserts the jury gave no award for future medicals and did not award Plaintiff the full amount she claimed for past pharmaceutical expenses. In making our award we are mindful that Plaintiff had undergone a previous back surgery shortly before she fell in the Winn-Dixie store. The record shows Plaintiff lives with constant pain and will need continued medical care for the rest of her life

to manage her pain and depression. This will include at least four visits per year to her pain management doctor as well as ongoing monitoring and blood work. She will likely need at least two epidural steroid injections a year. Based on the costs of treatment after Plaintiff's fall at Winn-Dixie to the date of trial, as reflected in the trial exhibits, Plaintiff's maximum future medical costs will average, at current rates, $4396.00 for two epidural injections per year; $1214.00 for visits to her pain management doctor annually; and $7,428.00 per year in prescription medications, equaling a total annual cost of $17,434.00, all related to her back. It is axiomatic that courts are not bound by rigid rules of formula in precisely determining what amount of medical costs results from a preexisting injury and what is reasonably attributable to the second accident. Considering the facts and circumstances of this Plaintiff, in this case, we are satisfied the record supports an award for past and future medicals in the amount of $91,383.00.

We further find the jury's awards of $10,000.00 for past, present, and future pain and suffering and $10,000.00 for past and future loss of enjoyment of life are abusively low. The record reflects that following Plaintiff's fall in Winn-Dixie she had a surgical procedure and suffers increased pain, depression, and increased limitations on activities she formerly enjoyed. Additionally, as detailed above, Plaintiff must henceforth be on pain medications and anti-depressants for the rest of her life, and she has to submit to constant monitoring by her pain management doctor to avoid the pitfall of addiction to prescription medications. She must also endure unpleasant and debilitating side effects of these necessary medications, in part attributable to the aggravation of her preexisting condition. Based on a comparison of the facts and circumstances of this case to those we have mentioned above, we award Plaintiff the sum of $80,000.00 in general damages.

13

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is amended to award Plaintiff, Patricia Ann Thompson, the sums of $91,383.00 for past and future medical expenses and $80,000.00 in general damages. The judgment of the trial court is further amended to hold Winn-Dixie 100% at fault for Plaintiff's injuries. All costs of court in the proceedings below and on this appeal are assessed against Defendant, Winn-Dixie.

**JUDGMENT AMENDED AND RENDERED AS AMENDED.**

PATRICIA ANN THOMPSON

VERSUS

WINN-DIXIE MONTGOMERY, INC., ET AL.


**PICKETT, J., concurs in part, dissents in part, and assigns written reasons.**

I agree with the majority opinion insofar as it casts Winn-Dixie with 100% fault.

I disagree with the increase in the award of general damages. The jury did not abuse its vast discretion in its award of past and future medical expenses and general damages. Because I would affirm the jury's damage awards, I respectfully dissent.